# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES W. REEVES, JR., | CASE NO. CV-F-03-5638 AWI LJO P |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT BE GRANTED |
| v. | |
| STATE OF CALIFORNIA, et al., | (Doc. 74) |
| Defendants. | |

I.   Defendant's Motion for Summary Judgment

    A.   Procedural History

Plaintiff James W. Reeves, Jr. ("plaintiff") is proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. This action is proceeding on plaintiff's second amended complaint, filed June 30, 2003, against defendant Markoff ("defendant") for acting with deliberate indifference to plaintiff's serious medical needs, in violation of the Eighth Amendment.[1] (Doc. 23.) Defendant filed a motion for summary judgment on February 24, 2005, plaintiff filed an opposition on March 28, 2005, and defendant filed a reply on April 5, 2005.[2] (Docs. 74, 80, 81.)

///

///

---

[1] Defendant Crose was dismissed from this action on February 15, 2005, pursuant to Federal Rule of Civil Procedure 4(m). (Doc. 73.)

[2] Plaintiff was provided with notice of the requirements for opposing a motion for summary judgment by the court in an order filed on September 18, 2003. Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

1

B.  Summary Judgment Standard

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Under summary judgment practice, the moving party

> [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Rule 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

///

1  return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436
2  (9th Cir. 1987).

3       In the endeavor to establish the existence of a factual dispute, the opposing party need not
4  establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual
5  dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at
6  trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce
7  the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"
8  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963
9  amendments).

10      In resolving the summary judgment motion, the court examines the pleadings, depositions,
11 answers to interrogatories, and admissions on file, together with the affidavits, if any. Rule 56(c).
12 The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable
13 inferences that may be drawn from the facts placed before the court must be drawn in favor of the
14 opposing party, Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654, 655
15 (1962) (per curiam). Nevertheless, inferences are not drawn out of the air, and it is the opposing
16 party's obligation to produce a factual predicate from which the inference may be drawn. Richards
17 v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th
18 Cir. 1987).   Finally, to demonstrate a genuine issue, the opposing party "must do more than
19 simply show that there is some metaphysical doubt as to the material facts. Where the record taken
20 as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine
21 issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

22      C.    Statement of Undisputed Facts

23 1.  Plaintiff James W. Reeves was lawfully committed to the California Department of
24      Corrections from Los Angeles County on August 10, 2000.
25 2.  Plaintiff arrived at the North Kern State Prison Reception Center on August 22, 2000, and
26      was transferred to California Correctional Institution at Tehachapi, California on May 3,
27      2001.
28 ///

3. Defendant Dr. Markoff attended to plaintiff's medical care and treatment between November 20, 2000 and January 18, 2001, and thereafter, defendant had no responsibility for plaintiff's medical care and treatment.

4. Defendant first saw plaintiff on November 20, 2000, when plaintiff came in complaining of lower back pain.

5. Plaintiff suffered from chronic lower back pain due to a previous gunshot wound and injuries from a 1992 motor vehicle accident.

6. Defendant's November 20, 2000 examination revealed that plaintiff's back was tender over the lower lumbar area, which is a typical area for some chronic back pain.

7. Defendant ordered x-rays of plaintiff's lumbosacral spine, and prescribed both a muscle relaxant (Methocarbamol) and a pain reliever (Acetaminophen) at the visit.

8. On November 22, 2000, defendant treated plaintiff after he fell at his job assignment and sprained his right wrist.

9. At that time, defendant changed plaintiff's pain medication from Acetaminophen to Ibuprofen.

10. Defendant next saw plaintiff on December 7, 2000.

11. On December 12, 2000, plaintiff was seen by Dr. Korovilas because plaintiff allegedly fell from his top bunk and cut his chin.

12. The physician progress notes indicate that plaintiff hit his chin on the corner of the shelf in his cell.

13. Plaintiff's injuries were a one inch cut under his chin, a stiff neck, and some pain.

14. Plaintiff was prescribed a muscle relaxant (Methocarbamol) and pain reliever (Ibuprofen), issued a 7-day temporary "medically unassigned" chrono, a 7-day medical lay-in order, and a temporary low bunk chrono, which expired on December 20, 2000.

15. On December 21, 2000, defendant again saw plaintiff, and reordered the lumbar spine x-rays and the muscle relaxant and pain reliever.

///

///

16. The x-ray reports, dated December 26, 2000, showed no fracture or dislocation and no significant arthritic change of plaintiff's pelvis; and plaintiff's lumbar spine x-ray showed only mild degenerative disc disease at L-4, 5.
17. There was joint space narrowing and very slight anterior osteophyte formation.
18. No spondylolthisis was depicted, and the pedicles were intact with no bone destruction.
19. Defendant again saw plaintiff on January 5, 2001, and was told that plaintiff's neck and back pain were worse.
20. Plaintiff's neck was tender in the lower portion, and his back was tender in the same area as his previous examination.
21. Defendant prescribed Ibuprofen and a muscle relaxant, Baclophen.
22. Defendant saw plaintiff for the final time on January 18, 2001, primarily for pharyngitis, an inflammation with pain in the throat.
23. On this visit, defendant looked at the x-ray films taken on December 26, 2000, and noted that they did show bullet fragments in the soft tissues.

    D.    <u>Discussion</u>

In his second amended complaint, plaintiff alleges that he has a documented history of lower back problems. Plaintiff alleges that he re-injured his lower back on November 20, 2000, and was examined by defendant Markoff, a physician, for severe lower back pain. Plaintiff alleges that on November 22, 2000, November 29, 2000, and December 7, 2000, he requested a lower-bunk chrono from defendant Markoff due to the pain and difficulty he was having entering his assigned bunk. Plaintiff alleges that defendant Markoff denied his requests and, on December 12, 2000, he fell while trying to climb into his upper bunk and seriously injured his spine. Plaintiff alleges that defendant Markoff's refusal to give him a chrono for a lower bunk after being placed on notice as to plaintiff's medical condition constituted deliberate indifference.

A prisoner's claim of inadequate medical care does not constitute cruel and unusual punishment unless the mistreatment rises to the level of "deliberate indifference to serious medical needs." <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976). The "deliberate indifference" standard involves an objective and a subjective prong. First, the alleged deprivation must be, in objective terms,

5

1  "sufficiently serious." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (citing Wilson v. Seiter, 501
2  U.S. 294, 298 (1991)). Second, the prison official must act with a "sufficiently culpable state of
3  mind," which entails more than mere negligence, but less than conduct undertaken for the very
4  purpose of causing harm. Farmer v. Brennan, 511 U.S. at 837. A prison official does not act in a
5  deliberately indifferent manner unless the official "knows of and disregards an excessive risk to
6  inmate health or safety." Id.

7  In applying this standard, the Ninth Circuit has held that before it can be said that a prisoner's
8  civil rights have been abridged, "the indifference to his medical needs must be substantial. Mere
9  'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action."
10 Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980), citing Estelle, 429 U.S. at
11 105-06. "[A] complaint that a physician has been negligent in diagnosing or treating a medical
12 condition does not state a valid claim of medical mistreatment under the Eighth Amendment.
13 Medical malpractice does not become a constitutional violation merely because the victim is a
14 prisoner." Estelle v. Gamble, 429 U.S. at 106; see also Anderson v. County of Kern, 45 F.3d 1310,
15 1316 (9th Cir. 1995); McGuckin v. Smith, 974 F.2d 1050, 1050 (9th Cir. 1992), overruled on other
16 grounds, WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc). Even gross
17 negligence is insufficient to establish deliberate indifference to serious medical needs. See Wood
18 v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990). A prisoner's mere disagreement with
19 diagnosis or treatment does not support a claim of deliberate indifference. Sanchez v. Vild, 891 F.2d
20 240, 242 (9th Cir. 1989).

21 Plaintiff arrived at the North Kern State Prison Reception Center on August 22, 2000, and
22 was transferred to California Correctional Institution at Tehachapi, California on May 3, 2001.
23 Undisputed Fact (UF) 2. Defendant Dr. Markoff attended to plaintiff's medical care and treatment
24 between November 20, 2000 and January 18, 2001, and thereafter, defendant had no responsibility
25 for plaintiff's medical care and treatment. UF 3.

26 Defendant first saw plaintiff on November 20, 2000, when plaintiff came in complaining of
27 lower back pain. UF 4. Plaintiff suffered from chronic lower back pain due to a previous gunshot
28 wound and injuries from a 1992 motor vehicle accident. UF 5. Defendant's November 20, 2000

examination revealed that plaintiff's back was tender over the lower lumbar area, which is a typical area for some chronic back pain. UF 6. Defendant ordered x-rays of plaintiff's lumbosacral spine, and prescribed both a muscle relaxant (Methocarbamol) and a pain reliever (Acetaminophen) at the visit. UF 7.

On November 22, 2000, defendant treated plaintiff after he fell at his job assignment and sprained his right wrist. UF 8. At that time, defendant changed plaintiff's pain medication from Acetaminophen to Ibuprofen. UF 9. Defendant contends that, in addition, he issued plaintiff a temporary 21-day "medically unassigned" chrono due to plaintiff's sprained wrist. (Markoff Dec., ¶ 7.)

Defendant next saw plaintiff on December 7, 2000. UF 10. Defendant contends that plaintiff stated that he probably did not need the back x-rays because his pain had cleared up with the muscle relaxant and pain medication prescribed in November, and that plaintiff requested and received medical clearance for transfer to a CCF camp. (Markoff Dec., ¶ 8.)

On December 12, 2000, plaintiff was seen by Dr. Korovilas because plaintiff allegedly fell from his top bunk and cut his chin. UF 11. The physician progress notes indicate that plaintiff hit his chin on the corner of the shelf in his cell. UF 12. Plaintiff's injuries were a one inch cut under his chin, a stiff neck, and some pain. UF 13. Defendant contends that there were no other signs of injury. (Markoff Dec., ¶ 9.) Plaintiff was prescribed a muscle relaxant (Methocarbamol) and pain reliever (Ibuprofen), issued a 7-day temporary "medically unassigned" chrono, a 7-day medical lay-in order, and a temporary low bunk chrono, which expired on December 20, 2000. UF 14.

On December 21, 2000, defendant again saw plaintiff, and reordered the lumbar spine x-rays and the muscle relaxant and pain reliever. UF 15. Defendant contends that plaintiff told him that the medications he had ordered for plaintiff had helped. (Markoff Dec., ¶ 10.)

The x-ray reports, dated December 26, 2000, showed no fracture or dislocation and no significant arthritic change of plaintiff's pelvis; and plaintiff's lumbar spine x-ray showed only mild degenerative disc disease at L-4, 5. UF 16. There was joint space narrowing and very slight anterior osteophyte formation. UF 17. No spondylolthisis was depicted, and the pedicles were intact with no bone destruction. UF 18.

1    Defendant again saw plaintiff on January 5, 2001, and was told that plaintiff's neck and back
2 pain were worse. UF 19. Plaintiff's neck was tender in the lower portion, and his back was tender
3 in the same area as his previous examination. UF 20. Defendant prescribed Ibuprofen and a muscle
4 relaxant, Baclophen. UF 21.

5    Defendant saw plaintiff for the final time on January 18, 2001, primarily for pharyngitis, an
6 inflammation with pain in the throat. UF 22. On this visit, defendant looked at the x-ray films taken
7 on December 26, 2000, and noted that they did show bullet fragments in the soft tissues. UF 23.

8    Defendant contends that there is no indication in plaintiff's medical chart that he asked for
9 a lower bunk chrono on any of his visits and defendant has no recollection of such requests.
10 (Markoff Dec., ¶ 14.) Defendant contends that even if such requests had been made, he would not
11 have granted them because they were not clinically indicated at any time by plaintiff's chronic lower
12 back pain. (Id., ¶ 15.) Defendant contends that the lower bunk chrono was clinically indicated for
13 only one week after December 12, 2000, and only because of plaintiff's neck strain and neck
14 stiffness. (Id., 16.) Finally, defendant contends that plaintiff's alleged fall on December 12, 2000
15 did not result in any serious lower back injury, as the x-ray reports dated December 26, 2000 showed
16 no fracture or dislocation, and showed only mild degenerative disc disease. (Id., ¶ 17.)

17    The court finds that defendant has met his initial burden of informing the court of the basis
18 for his motion, and identifying those portions of the record which he believes demonstrate the
19 absence of a genuine issue of material fact. The burden therefore shifts to plaintiff to establish that
20 a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith
21 Radio Corp., 475 U.S. 574, 586 (1986). As stated above, in attempting to establish the existence of
22 this factual dispute, plaintiff may not rely upon the mere allegations or denials of his pleadings, but
23 is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery
24 material, in support of its contention that the dispute exists. Rule 56(e); Matsushita, 475 U.S. at 586
25 n.11; First Nat'l Bank, 391 U.S. at 289; Strong v. France, 474 F.2d 747, 749 (9th Cir. 1973).

26    In his opposition, plaintiff contends that on November 20, 2000, defendant knew plaintiff had
27 a serious medical condition and defendant denied medical treatment that would have prevented
28 injury to plaintiff. (Opp., 4:20-23; Exhibit A-6.) Plaintiff contends that defendant did not act

8

reasonably when he denied plaintiff's requests for a lower bunk chrono, and that the issuance of a lower bunk chrono was reasonable if not a medical necessity. (Id., 3:26-27, 4:4-6.)

At issue is whether defendant, in failing to issue plaintiff a lower bunk chrono due to plaintiff's chronic lower back problems, "[knew] of and disregard[ed] an excessive risk to [plaintiff's] health or safety." Farmer v. Brennan, 511 U.S. at 837. Although defendant does not recall plaintiff requesting a lower bunk chrono, defendant has submitted evidence that in his professional opinion, a lower bunk chrono was not clinically indicated.

"A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a s 1983 claim." Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981) (internal citation omitted). To prevail, plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances . . . and . . . that they chose this course in conscious disregard of an excessive risk to plaintiff's health." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1986) (internal citations omitted). Plaintiff's lay opinion that he had a medical need for a lower bunk chrono is insufficient to raise a triable issue of fact. Aside from his own lay opinion, plaintiff has not submitted any evidence that he had a medical need for a lower bunk chrono and that by failing to issue the chrono, defendant acted with deliberate indifference to plaintiff's serious medical needs. For this reason, the court finds that defendant is entitled to judgment as a matter of law on plaintiff's Eighth Amendment medical claim against him.

E.   Conclusion

Based on the foregoing, it is HEREBY RECOMMENDED that defendant's motion for summary judgment, filed February 24, 2005, be GRANTED, thus concluding this action in its entirety, and judgment be entered for defendant and against plaintiff.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the

///

specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   July 22, 2005**                                   /s/ Lawrence J. O'Neill
b9ed48                                                         UNITED STATES MAGISTRATE JUDGE